UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

MAKSIM ANOKHIN,                          )
                                         )
                    Plaintiff,           )
                                         )
        v.                               )        No. 1:26-cv-00792-JRO-MG
                                         )
BOARD OF TRUSTEES OF INDIANA             )
UNIVERSITY,                              )
                                         )
                    Defendant.           )

**ORDER GRANTING MOTION TO PROCEED *IN FORMA PAUPERIS*,
SCREENING COMPLAINT, AND DIRECTING FURTHER PROCEEDINGS**

This matter is before the Court on *pro se* Plaintiff Maksim Anokhin's

Motion for Leave to Proceed *In Forma Pauperis*. Dkt. [2]. Plaintiff alleges civil

rights violations connected with his former employment at Indiana University.

Dkt. 1. On May 13, 2026, Plaintiff filed an amended complaint. Dkt 9. For the

reasons below, Plaintiff's Motion to Proceed *in Forma Pauperis* is **GRANTED.**

Because the Court grants that motion, this action is also subject to screening

pursuant to 28 U.S.C. § 1915(e)(2)(B).

**I. *IN FORMA PAUPERIS* STATUS**

The Court may authorize a plaintiff to file a lawsuit "without prepayment

of fees" if the plaintiff "submits an affidavit" demonstrating that he lacks the

assets to pay the filing fee at this time. 28 U.S.C. § 1915(a)(1). Here, plaintiff's

motion, dkt. [2], meets this standard and is **GRANTED.**

While *in forma pauperis* status allows a plaintiff to proceed without pre-paying the filing fee, the plaintiff remains liable for the full fees. "[A]ll § 1915(a) does for any litigant is excuse the *pre*-payment of fees. Unsuccessful litigants are liable for fees and costs and must pay when they are able." *Robbins v. Switzer*, 104 F.3d 895, 898 (7th Cir. 1997). The filing fee for *in forma pauperis* litigants is $350.00. No payment is due at this time, but the $350.00 balance remains due and owing.

## II. SCREENING STANDARD

When a plaintiff is granted *in forma pauperis* status, the Court has an obligation to ensure the complaint is legally sufficient. 28 U.S.C. § 1915(e)(2)(B). The Court must dismiss the complaint if it is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary damages against a defendant who is immune from such relief. *Id.* Dismissal under § 1915 is an exercise of this Court's discretion. *Denton v. Hernandez*, 504 U.S. 25, 34 (1992).

In determining whether the complaint states a claim, the Court applies the same standard as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "taking all well-pleaded allegations of the complaint as true and viewing them in the light most favorable to the plaintiff." *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011) (quoting *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010). To survive dismissal, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Because a defendant must

2

have "fair notice of what . . . the claim is and the grounds upon which it rests," it is not enough for a plaintiff to say that he has been illegally harmed.  *Twombly*, 550 U.S. at 555.  Rather, he must set forth a "short and plain statement" of facts in his complaint such that the Court can infer the ways in which the named defendant could be held liable for the harm alleged.  Fed. R. Civ. P. 8(a)(2).

### III. THE COMPLAINT

The Court accepts Plaintiff's factual allegations as true at the pleading stage, but not his legal conclusions.  *See Iqbal*, 556 U.S. at 678 ("[W]e must take all of the factual allegations in the complaint as true," but "we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'") (quoting *Twombly*, 550 U.S. at 555)).  Plaintiff's lawsuit is premised on employment discrimination on the basis of his sexual orientation, age, and disability, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17; the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 to 634; and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12112 to 12117.  Dkt. 9 at 2.  Plaintiff alleges that Defendant discriminated against him by failing to hire him, terminating his employment, failing to promote him, failing to accommodate his disability, retaliating against him, and providing him with unequal terms and conditions of employment.  *Id.* at 4.

Plaintiff was formerly employed in a research position in the Department of Chemistry and Biochemistry at Indiana University.  In December of 2023, Plaintiff identified a fundamental scientific error in a research proposal advanced by his supervisor.  He conducted experiments demonstrating that the current

course of research was not viable and informed his supervisor. Plaintiff's supervisor "rejected the experimental evidence and pressured Plaintiff to continue to work consistent with the incorrect theory, placing Plaintiff in a position of professional conflict and concern regarding research integrity." 9 at 6.

In January of 2024, Plaintiff interviewed with an investigator from the U.S. Equal Employment Opportunity Commission (EEOC) concerning a separate and previous discrimination charge he had filed. Plaintiff requested and was denied leave for this interview, which led to him having to take part in the interview from the workplace. This made Plaintiff's protected activity from the other case "known within the work environment." *Id.* After the interview with the EEOC, Plaintiff's supervisor became aware and questioned him about it. Plaintiff declined to discuss.

Plaintiff alleges that he has HIV and post-traumatic stress disorder (PTSD), Grave's disease, and that these are disabilities within the meaning of the ADA. These conditions substantially limit his ability to work, concentrate, and use the workplace facilities. Plaintiff also claims that Defendant was aware of his sexual orientation, which he does not specify in the complaint. Plaintiff requested a reasonable accommodation, "including access to a single use gender-neutral restroom," due to his disabilities. *Id.* By Plaintiff's account, Defendant failed to provide this reasonable accommodation and failed to engage in a good faith interactive process to identify and implement reasonable accommodations. This

led to Plaintiff being forced to use facilities that caused discomfort and distress and interfered with Plaintiff's ability to perform his job.

Additionally, Plaintiff alleges he was subjected to inappropriate comments and differential treatment, including disclosure of personal characteristics and conduct that contributed to a hostile and discriminatory work environment. He claims his supervisor, Dr. Sébastien Laulhé, stated that Plaintiff "was unable to adapt to lab culture" and used this characterization in evaluating Plaintiff's performance. *Id.* at 7. Plaintiff maintains he was excluded from his workspace and ostracized from his co-workers when he was assigned to a separate laboratory space. This treatment differed from similarly situated employees outside of Plaintiff's protected classes. Defendant's actions, Plaintiff claims, were motivated in part by Plaintiff's protected characteristics, including his disabilities and sexual orientation.

Plaintiff further claims that Defendant imposed unreasonable and inconsistent work requirements and expectations, including expectations that were not supported by available resources and equipment. Completing assigned work was impracticable without access to the requisite equipment, which contributed to negative performance evaluations and adverse treatment. *Id.* at 6. On April 4, 2024, Plaintiff filed a complaint with the University to report the unfair treatment and his concerns regarding research practice. Despite this, Defendant failed to take corrective action. Plaintiff believes that he was subjected to adverse employment actions, including the denial of reasonable

accommodation, negative performance evaluations, and termination of employment because he engaged in protected activity. *Id.*

On or about June 22, 2024, Defendant terminated Plaintiff's employment. Plaintiff claims he applied for a teaching position with Defendant for which he was qualified but was not selected. The position was instead filled by another candidate outside of Plaintiff's protected class "under circumstances giving rise to an inference of discrimination." *Id.* It is unclear when Plaintiff applied for that position, including whether he applied before or after he was terminated. On or around October 25, 2024, Plaintiff filed a charge with the EEOC regarding the above alleged discriminatory conduct. On January 22, 2026, Plaintiff received a Right to Sue Notice from the EEOC. Dkt. 1 at 10. He filed his complaint in this Court on April 21, 2026. Dkt. 1. He amended it on May 13, 2026. Dkt. 9.

Plaintiff claims that as a direct and proximate cause of Defendant's actions, he has suffered loss of employment, loss of wages and benefits, emotional distress, and other damages. Plaintiff requests compensatory damages, including damages for emotional distress; back pay and lost benefits; front pay or reinstatement; and costs. *Id.* at 7.

## IV. DISCUSSION

Applying the screening standard to the factual allegations in the complaint, Plaintiff's claims of employment discrimination under Title VII and the ADA **shall proceed** as submitted. While his allegations are broad and conclusory at times, Plaintiff sufficiently pleads facts to warrant progression to

the next stage of litigation.  He provides dates of employment, alleges specific instances of discriminatory conduct, and alleges facts sufficient to show he is a member of a protected class.  Conversely, his claim under the ADEA is **dismissed** for failure to state a claim.

### A.  Title VII

Plaintiff's Title VII claim **shall proceed**.  Title VII of the Civil Rights Act of 1964 makes it unlawful for employers to "discharge any individual, or otherwise to discriminate against any individual" because of race, color, religion, sex, or national origin.  42 U.S.C. § 2000e-2(a)(1).  To plead a Title VII claim, Plaintiff must allege "(1) who discriminated against him; (2) the type of discrimination that occurred; and (3) when the discrimination took place."  *McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011).

As detailed above, Plaintiff alleges sufficient facts that his supervisor and Indiana University leadership discriminated against him while he worked there. And these allegations make the Indiana Board of Trustees, as Dr. Laulhé's employer, a proper party, at least at this screening stage because Title VII does not authorize claims against supervisors in their individual capacity based on allegations of discriminatory conduct in the course of their employment.  *See Gastineau v. Fleet Mortg. Corp.*, 137 F.3d 490, 494 (7th Cir. 1998) ("Congress intended only for employers to be liable for their agent's actions under the traditional *respondeat superior* doctrine, not for agents to be personally liable."); *Williams v. Banning*, 72 F.3d 552, 555 (7th Cir. 1995) ("[A] supervisor does not, in his individual capacity, fall within Title VII's definition of employer.").

### B. Age Discrimination

Plaintiff does not state a claim under the ADEA.  The ADEA, 29 U.S.C. § 621 et seq., prohibits age-based discrimination against individuals who are 40 years of age or older.  *O'Connor v. Consol. Coin Caterers Corp.,* 517 U.S. 308, 312 (1996).  Courts in this Circuit apply a "minimal pleading standard" for "simple" discrimination claims, and the plaintiff "need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of" a protected characteristic.  *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008).

Here, Plaintiff fails to plead sufficient facts as to his age discrimination claim.  Aside from acknowledging that he was born in 1983, he does not allege any facts as to age-based discriminatory remarks or other conduct, or any allegation that he was terminated based on his age.  This claim must be **dismissed.**

### C. Americans with Disabilities Act

Plaintiff's ADA claim **shall proceed**.  The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  "Discrimination can take the form of treating a disabled employee differently from other workers or failing to make reasonable accommodations to the known limitations of the employee."

8

*Youngman v. Peoria Cnty.*, 947 F.3d 1037, 1042 (7th Cir. 2020); *e.g., Scheidler v. Indiana,* 914 F.3d 535, 541 (7th Cir. 2019).

Plaintiff claims that he has PTSD and HIV, and Grave's disease and that these conditions rise to the level of disabilities within the meaning of the ADA. He alleges that Defendant failed to provide reasonable accommodations to him in the form of a separate restroom when notified of these disabilities.  He further alleges that he received unjustifiably poor performance evaluations once his supervisors were aware of his disabilities.  Plaintiff pleads enough to advance his claim at this stage.

In sum, the following claims shall proceed:

- A claim of employment discrimination under Title VII **shall proceed** against Defendant, and

- A claim of employment discrimination under the Americans with Disabilities Act **shall proceed** against Defendant.

### V. CONCLUSION AND SERVICE OF PROCESS

For the foregoing reasons, Plaintiff's Motion for Leave to Proceed *In Forma Pauperis* is **GRANTED.**  Dkt. [2].  Plaintiff's claims under Title VII and ADA, dkt. [9], **shall proceed.**  Plaintiff's Age Discrimination claim is **dismissed without prejudice**.  Plaintiff shall have **through June 12, 2026, to file a second amended complaint** for the purposes of realleging the dismissed claim in a manner that cures the deficiencies identified by the Court, if he choses.  The second amended complaint must (a) contain a short and plain statement of the claim showing that the plaintiff is entitled to relief, which is sufficient to provide

the defendants with fair notice of the claim and its basis; (b) include a demand for the relief sought; and (c) identify what injury he claims to have suffered and what persons are responsible for each such injury.  In organizing his second amended complaint, the Plaintiff may benefit from using the Court's complaint form.  The **clerk is directed** to include a copy of the *pro se* non-prisoner complaint form along with the Plaintiff's copy of this Order, which he must use if he files an amended complaint.  *See* Local Rule 8-1 (requiring *pro se* plaintiffs to use the clerk-provided form for claims under 42 U.S.C. § 1983).

The **clerk is directed** pursuant to Fed. R. Civ. P. 4(c)(3) to issue process to Defendant Board of Trustees of Indiana University in the manner specified by Rule 4(d).  Process shall consist of the complaint filed on May 13, 2026, dkt. 9, applicable forms (Notice of Lawsuit and Request for Waiver of Service of Summons and Waiver of Service of Summons); and this Order.

Nothing in this Order prohibits the filing of a proper motion pursuant to Rule 12 of the Federal Rules of Civil Procedure.

**SO ORDERED.**

Date: 5/14/2026

_____

Justin R. Olson
United States District Judge
Southern District of Indiana

Distribution:

10

MAKSIM ANOKHIN
133 West 145th Street
Apt 22
New York, NY 10039

Indiana University Board of Trustees
107 S. Indiana Ave.
Bloomington, IN 47405